UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

KANE STACKHOUSE,            )
                           )
        Petitioner,        )
                           )
v.                         )      No.    3:21-CV-017-TAV-JEM
                           )
STATE OF TENNESSEE,        )
                           )
        Respondent.        )

**<u>MEMORANDUM OPINION</u>**

After Petitioner used a gun to take money and car keys from David Lindsey ("the victim"), shot the victim in the leg and in the head in a manner that resulted in the victim's death, and made recorded statements to police incriminating himself in this incident, a jury convicted Petitioner of first-degree felony murder and especially aggravated burglary [Doc. 7-20, pp. 20–24, 37–45]. *State v. Stackhouse*, No. E2009-01669-CCA-R3-CD, 2010 WL 4545580, at *1–2 (Tenn. Crim. App. Nov. 12, 2010) ("*Stackhouse I*"); *Stackhouse v. State*, No. E2019-01651-CCA-R3-PC, 2020 WL 3968099, at *1 (Tenn. Crim. App. July 14, 2020) ("*Stackhouse II*"). Petitioner does not deny using a gun to take the victim's money and property before shooting the victim twice but insists that the shooting was accidental, and that he was "not in [his] right mind and . . . a child" [Doc. 7-20, pp. 21–23].

Now before the Court is Petitioner's pro se petition for habeas corpus relief under 28 U.S.C. § 2254 in which Petitioner, a state prisoner, seeks relief from his first-degree felony murder and especially aggravated burglary convictions based on his claims that (1) his counsel were ineffective [Doc. 1, pp. 5–7]; and (2) his trial judge, Judge Richard

Baumgartner was addicted to prescription drugs and alcohol during and after his trial, which Petitioner claims violated his rights to due process and a fair and impartial trial and amounted to structural error [*Id.* at 8–9]. Respondent filed a response in opposition to the petition [Doc. 14] and the state court record [Doc. 7]. Petitioner did not file a reply, and his time for doing so has passed [Doc. 6, p. 1].

After reviewing the relevant filings and the state court record, the Court finds that Petitioner is not entitled to relief under § 2254. Accordingly, the Court will not hold an evidentiary hearing, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the habeas corpus petition will be **DENIED**, and this action will be **DISMISSED**.

## I.    BACKGROUND[1]

Petitioner robbed and shot the victim in the early morning hours of November 11, 2006. *Stackhouse I*, at *3. On November 12, 2006, police took Petitioner into custody for an attempted aggravated robbery charge arising from a separate incident that occurred a few hours after the incident between Petitioner and the victim at a used car lot located near the site of the incident between Petitioner and the victim. *Id.* at *1.

Soon after police took Petitioner into custody he told jail officials that he wanted to commit suicide, had previously had suicidal thoughts and panic attacks, had tried to hang

---

[1] The Court has reviewed the entirety of the state court record [Doc. 7], including the transcripts of the suppression hearing [Docs. 7-3, 7-4, 7-4] and Petitioner's trial [Docs. 7-6, 7-7, 7-8]. Nevertheless, the Court takes the majority of the relevant background facts for Petitioner's claims in this action from the Tennessee Court of Criminal Appeals' opinions, *Stackhouse I* and *Stackhouse II*, as Petitioner does not dispute the recitations of facts from those opinions.

himself and taken pills in the prior days, and wished that the victim, who was armed, had shot him. *Stackhouse I*, at *1–2. Accordingly, at 8:30 a.m. on November 12, 2006, jail officials placed Petitioner on a "therapeutic bench" for observation. *Id.* at *2. Other than three periods of time when detectives questioned him about the murder of the victim on November 12 and 13, and times when he was allowed to eat, drink, and use the restroom, Petitioner remained on this therapeutic bench until 3:30 p.m. on November 14, 2006, when he moved to a therapeutic cell [Doc. 7-3, p. 16]. *Id.* at *2–3. Testimony from jail medical providers indicates that Petitioner should have been offered a "no harm contract," which would have been a step toward him leaving the bench, within his first 24 hours on the bench, but this did not occur due to (1) an order from the chief of detectives stating that Petitioner should remain on the bench, even though the chief of detectives did not have authority to determine Petitioner's placement in the medical unit; and/or (2) a note on a board in the medical unit indicating that medical providers should not speak to Petitioner without permission. *Id.* at *2–3.

On November 15, 2006, Petitioner was arraigned for the used car lot aggravated robbery charge. *Id.* at *3. While Petitioner was in the courthouse hallway after this arraignment, he indicated that he wanted to talk to a police detective again. *Id.* at *3–4. Accordingly, on that same day, police again questioned Petitioner about the incident between himself and the victim, at which point Petitioner gave police a statement incriminating himself in the armed robbery and shooting incident with the victim before leading police to a bag of items he had left near the scene of the incident with the victim.

3

*Id.* Prior to questioning Petitioner, police read Petitioner his *Miranda* rights, and Petitioner initialed and signed waivers of those rights. *Id.*

A grand jury indicted Petitioner for charges based on the incident between him and the victim [Doc. 7-1, pp. 7–10]. Petitioner claims that, on an unspecified date before the indictment, and before the case was assigned to Judge Baumgartner, his mother had a phone call lasting approximately 45 minutes with Judge Baumgartner's secretary [Doc. 7-19, p. 12].

Petitioner's counsel filed a motion to suppress Petitioner's incriminating statement to police regarding the incident between Petitioner and the victim on various grounds, including Rule 5(a) of the Tennessee Rules of Criminal Procedure [Doc. 7-1, pp. 60–64]. After holding an extensive hearing on the motion to suppress, during which Petitioner's counsel did not raise the Rule 5(a) argument [Docs. 7-3, 7-4, 7-5], the trial court denied the motion [Doc. 7-2, p. 59].

Petitioner then proceeded to trial [Docs. 7-6, 7-7, 7-8], and the jury convicted him of various crimes, including first-degree felony murder and especially aggravated burglary [Doc. 7-2, pp. 85–86]. Petitioner appealed, and the Tennessee Court of Criminal Appeals ("TCCA") affirmed his first-degree felony murder and especially aggravated burglary convictions. *Stackhouse I.*

Petitioner then filed a pro se petition for post-conviction relief [Doc. 7-19, pp. 5–23]. Counsel filed an amended petition incorporating the pro se petition [*Id.* at 37–43] before filing an amended petition stating that it contained all grounds for post-conviction relief

[*Id.* at 52–54]. After a hearing [Doc. 7-20], the post-conviction court denied Petitioner relief [*Id.* at 61–63], and the TCCA affirmed. *Stackhouse II*.

Petitioner then filed the instant petition for relief under § 2254 [Doc. 1].

## II.    STANDARD OF REVIEW

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a federal court to grant habeas corpus relief on any claim adjudicated on the merits in a state court only where that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This Court may grant habeas corpus relief under the "contrary to" clause where the state court (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law; or (2) decide[d] a case differently than the Supreme Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The Court may grant habeas corpus relief under the "unreasonable application" clause where the state court applied the correct legal principle to the facts in an unreasonable manner. *Id.* at 407.

But even an incorrect state court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was

5

unreasonable—a substantially higher threshold." (citing *Williams*, 529 U.S. at 410)). Rather, this Court may grant relief for a claim the state court decided on its merits only where the state court ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Also, before a federal court may grant habeas corpus relief, the petitioner must have first exhausted his available state remedies for the claim. 28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). Fair presentation means that "the substance of a federal habeas corpus claim must first be presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 278 (1971). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citations omitted). Instead, the doctrine of exhaustion requires a petitioner to present "the same claim under the same theory" to the state and the federal courts. *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (finding constitutional claim must be presented in federal court under the same theory as presented in state appellate process). Tennessee has determined that presentation to the TCCA will satisfy the requirement of presentation to the state's highest court. Tenn. S. Ct. R. 39.

6

If a prisoner never presented a claim to the highest available state court and a state procedural rule now bars presentation of the claim, the petitioner procedurally defaulted that claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991). In such circumstances, the claim is technically exhausted but procedurally defaulted. *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Coleman*, 501 U.S. at 732; *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"). Tennessee petitioners may generally proceed through only one full round of the post-conviction process, and Tennessee imposes a one-year statute of limitation on such actions. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

A federal district court may review a procedurally defaulted habeas corpus claim only where the petitioner shows cause for his default and actual resulting prejudice, "or . . . that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50. Errors of post-conviction counsel generally are not "cause" to excuse a procedural default. *Id.* at 753–53. But the Supreme Court established an equitable exception to this rule in *Martinez v. Ryan*, holding that the inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective assistance of trial counsel claim under certain circumstances. 566 U.S. 1, 9, 17 (2012). The Supreme Court has described the *Martinez* exception as follows:

[The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez*, 566 U.S. at 13–14, 16–17). The *Martinez* exception, applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014).

An ineffective assistance of counsel claim is substantial where it "has some merit and is debatable among jurists of reason." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) (citing *Martinez*, 566 U.S. at 14). Conversely, "a claim is insubstantial when 'it does not have any merit,' 'is wholly without factual support,' or when 'the attorney in the initial-review collateral proceeding did not perform below constitutional standards.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16).

The *Martinez* exception does not apply to a claim of ineffective assistance of trial counsel that a petitioner raised in the initial-review collateral stages and defaulted on appeal. *See, e.g.*, *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals"). And *Martinez* does not excuse a

8

petitioner's failure to develop a factual record for a claim, even where he attributes that failure to the ineffective assistance of his post-conviction counsel. *Shinn v. Ramirez*, 596 U.S. 366, 384 (2022).

## III. ANALYSIS

### A. Ineffective Assistance of Counsel Claims

In his § 2254 petition, Petitioner sets forth a number of ineffective assistance of counsel claims, which the Court summarizes as follows:

(1) Counsel Mark Stephens was ineffective for not having Judge Baumgartner recused due to a conflict of interest;

(2) Trial counsel was ineffective for waiving appellate challenge to admission of Petitioner's confession under Rule 5(a);

(3) Trial counsel was ineffective for not advising Petitioner that the TCCA had denied his appeal;

(4) Trial counsel was ineffective for:

> (a) not arguing "official latent print results to the jury";
> (b) not arguing that two lead fragments were not linked to Petitioner's weapon;
> (c) failing to object to a "leading statement by [the] prosecutor";

(5) Trial counsel "failed to argue that the official serology/DNA report indicated that there was 'no evidence of close range firing'";

(6) Trial counsel failed to object to the testimony of Michael McMahan and Aaron Allen, and/or evidence introduced during their testimony;

(7) Trial counsel was ineffective for "fail[ing] to have Mr. Parks['s] testimony redacted from the record[] or for failing to have the judge instruct the jury to disregard testimony regarding the blood spatter in Exhibit #12";

(8) Trial counsel was ineffective for not challenging the sufficiency of the evidence to support his convictions;

9

(9)     Trial counsel was ineffective for failing to seek to suppress "[P]etitioner's statement because it was obtained in violation of the Fourth and Fifth Amendment, thus being the product of the fruit of the poisonous tree";

(10)    Trial counsel was ineffective for not having Petitioner testify at trial;

(11)    Trial counsel was ineffective for not exploring a defense based on Petitioner's "mental condition";

(12)    Trial counsel failed to ensure that Petitioner was able to have meaningful participation in his own defense; and

(13)    The cumulative effect of counsel's errors entitles him to a new trial.

[Doc. 1, pp. 5–7].

### 1. *Martinez* and Waiver

In his petition for § 2254 relief, Petitioner seeks to bring many ineffective assistance of counsel claims that he did not raise or incorporate by reference in either (1) his second amended petition for post-conviction relief [Doc. 7-19, pp. 52–54], which was the final petition that the post-conviction court addressed on the merits, or (2) his appeal of the post-conviction court's denial of his petition [Doc. 7-21]. However, Petitioner raised most, if not all, of these claims in his initial pro se petition for post-conviction relief [Doc. 7-19, pp. 5–23].

In his response, Respondent claims that Petitioner procedurally defaulted the ineffective assistance of counsel claims he raised in any of his post-conviction petitions, did not withdraw, and did not raise to the TCCA, and that *Martinez* cannot excuse this default, because the state courts still could have addressed the claims, and the default occurred on appeal [Doc. 41, pp. 41–42]. In support of this argument, Respondent cites

10

*Garrett v. State*, No. M2001-333-CCA-R3-PC, 2012 WL 3834898, at *17 (Tenn. Crim. App. Sep. 5, 2012). However, *Garrett* does not support Respondent's argument.

First, as the Court noted above, *Martinez* provides in relevant part that the ineffective assistance of post-conviction counsel can excuse a procedural default of a substantial ineffective assistance of counsel claim. *Trevino*, 569 U.S. at 423. However, *Martinez* does not excuse a procedural default of an ineffective assistance of trial counsel claim where the petitioner raised the claim in a post-conviction petition but failed to raise it on appeal. *Middlebrooks*, 843 F.3d at 1136.

In *Garrett*, the TCCA found in relevant part that the post-conviction petitioner had not waived a claim for purposes of his TCCA appeal where (1) the petitioner had raised that same claim in a pro se petition, and (2) the amended petition that the post-conviction court addressed on the merits incorporated the earlier pro se petition. *Id.* But this finding does not address or support Respondent's argument in the case at bar that *Middlebrooks* bars *Martinez* from applying to Petitioner's ineffective assistance of counsel claims that his post-conviction counsel did not include or incorporate in his second amended post-conviction petition because Petitioner only defaulted those claims on appeal. Moreover, the Tennessee Supreme Court has held that "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection." *Holland v. State*, 610 S.W. 450, 458 (Tenn. 2020).

Accordingly, based on *Holland* and *Middlebrooks*, the Court finds that Petitioner abandoned on appeal only his ineffective assistance of counsel claims that (1) he raised in

the post-conviction hearing without objection; (2) the post-conviction court addressed on the merits; and (3) he did not raise to the TCCA. *Middlebrooks*, 843 F.3d at 1136; *Holland*, 610 S.W. at 458. Thus, *Martinez* could still excuse Petitioner's default of the claims he raised in his pro se and first amended petitions for post-conviction relief but did not raise or incorporate in his second amended petition for post-conviction relief, if those claims met all the other *Martinez* requirements.

However, Petitioner has not demonstrated that his claims meet the other *Martinez* requirements. Specifically, the Court notes that, in his petition, Petitioner does not allege or set forth any facts indicating that the ineffective assistance of his post-conviction counsel caused his default of the ineffective assistance of counsel claims that he raises in his § 2254 petition but did not raise in his second amended petition for post-conviction relief. As such, he has not set forth any cause for the Court to excuse his procedural default of these claims. *Hugueley v. Mays*, 964 F.3d 489, 498–99 (6th Cir. 2020) (providing that a petitioner relying on the *Martinez* exception "must still demonstrate that the ineffectiveness of his post-conviction counsel was the 'cause' of his default" (quoting *Trevino*, 569 U.S. at 423)). Thus, Petitioner procedurally defaulted the ineffective assistance of counsel claims he did not raise in his second amended petition for post-conviction relief and in his post-conviction appeal, and he has not shown cause for the Court to excuse that procedural default. As such, these claims are **DENIED** on this ground.

Nevertheless, the Court will briefly address the merits of all of Petitioner's ineffective assistance of counsel claims below, including those that he procedurally

defaulted, as long as *Middlebrooks* does not bar the procedurally defaulted claims from the Court's review.

## 2.     Standard of Review

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  This includes the right to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  A petitioner has the burden of proving ineffective assistance of his counsel.  *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  A party asserting an ineffective-assistance-of-counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  The evaluation of the objective reasonableness of

13

counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 687. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### 3. Recusal

As set forth above, Petitioner first claims that he is entitled to relief under § 2254 because his counsel was ineffective for not having Judge Baumgartner recused from his trial based on a conflict of interest [Doc. 1, p. 5]. In his response, Respondent contends that this allegation is not substantial and fails to state a cognizable claim, and further notes that Petitioner did not present any evidence to support this allegation in the state court proceedings [Doc. 14, pp. 44–45].

First, Petitioner does not set forth any facts to support this claim in his petition. As such, it does not comply with Rule 2(c) of the Rules Governing Section 2254 Cases, which

14

requires a § 2254 petition to, among other things: "state the facts supporting each ground [for relief]. . . ."

Additionally, even if the Court liberally construes this claim to set forth the same claim Petitioner pursued in his pro se petition for post-conviction relief, in which Petitioner asserted that his trial counsel should have sought recusal of Judge Baumgartner due to Petitioner's mother having a 45-minute phone call with Judge Baumgartner's secretary prior to the grand jury indicting Petitioner or the case being assigned to Judge Baumgartner [Doc. 7-19, pp. 12–13], Petitioner does not point to, nor did the Court discover, any evidence in the record to support this claim, including any evidence of the contents of this phone call, or that Petitioner's counsel was aware of this phone call. Thus, the Court cannot find that Petitioner's counsel was deficient for not filing a motion for recusal of Judge Baumgartner, or that counsel not filing this motion caused Petitioner any prejudice.

Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### 4. Rule 5(a)

Petitioner next claims that his trial counsel was ineffective for waiving his ability challenge the admission of his confession under Rule 5(a) of the Tennessee Rules of Criminal Procedure on appeal [Doc. 1, p. 5]. In response, Respondent contends that this claim is not substantial, as the TCCA also noted in its opinion on Petitioner's direct appeal that no violation of Rule 5(a) occurred, and the record demonstrates that Petitioner's statements to police were voluntary [Doc 14, pp. 45–46]. The Court agrees with Respondent that Petitioner is not entitled to relief because Petitioner has not shown that the TCCA's determination that Petitioner had not shown a violation of Rule 5(a) was an

unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented.

As set forth above, in his motion to suppress Petitioner's statements to police, Petitioner's counsel cited Rule 5(a) as one ground for the motion [Doc. 7-1, pp. 61–63]. Specifically, Petitioner's counsel essentially argued that Petitioner's incriminating statements to police should be suppressed because he had not been arraigned for the used car lot aggravated robbery charge for which he was in custody when he made those statements within 48 hours of his arrest, and this delay in his arraignment for the used car lot aggravated robbery charge violated Rule 5(a) [*Id.* at 63]. But his counsel did not present this argument at the suppression hearing [Docs. 7-3, 7-4, 7-5].

Petitioner raised this claim to the TCCA in his direct appeal [Doc. 7-13, p. 18]. While the TCCA first found this claim waived, it also addressed this claim as follows:

> Furthermore, as correctly noted by the State, the defendant's allegation of a Rule 5(a) error is misplaced because the defendant was arrested for the attempted aggravated robbery pursuant to a warrant. *See generally Huddleston,* 924 S.W.2d 666 (the defendant's rights were violated under both Rule 5(a) and the Fourth Amendment by inordinate delay in taking defendant to arraignment following a warrantless arrest).

*Stackhouse I*, at *6.

Thus, the TCCA found that this argument had no merit under Tennessee law. It is not the role of this Court to reexamine this state law finding. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Thus, the Court cannot find

16

that Petitioner's counsel was deficient for not raising this claim at the suppression hearing, or that his failure to do so caused Petitioner any prejudice.

Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### 5. Denial of Appeal

Petitioner next argues that his counsel was ineffective for not providing him notice that the TCCA had denied his appeal [Doc. 1, p. 5]. However, as Respondent correctly notes [Doc. 14, p. 46], the record demonstrates that Petitioner was able to file a delayed application for the Tennessee Supreme Court to review his case [Doc. 7-17], which the Tennessee Supreme Court denied [Doc. 7-18]. Accordingly, the Court cannot find that Petitioner suffered any prejudice due to his counsel's failure to inform him of the TCCA's denial of his appeal, and he is not entitled to relief under § 2254 for this claim.

### 6. Evidentiary Arguments

In Petitioner's ineffective assistance of counsel claims numbered (4) through (7), he challenges his trial counsel's failure to challenge certain evidence and testimony. Specifically, in claims (4) and (5), Petitioner sets forth general arguments his counsel should have made regarding certain evidence and states that his counsel should have objected to a leading statement by the prosecutor but does not specify which statement [Doc. 1, p. 5]. In claim (6), Petitioner challenges his counsel's failure to challenge testimony and evidence from witnesses but does not specify which parts of the witnesses' testimony and/or evidence counsel should have challenged, other than to state that some of the testimony and evidence was "irrelevant." In claim (7), Petitioner asserts that his

counsel should have either (1) had testimony from a witness about blood spatter redacted from the record, or (2) had the judge instruct the jury to disregard that evidence [*Id.*].

But even if the Court disregards Petitioner's lack of specificity in some of these claims and/or liberally construes them to raise the similar claims Petitioner raised in his pro se petition for post-conviction relief [Doc. 7-19, pp. 12–17], Petitioner cannot show that he was prejudiced due to any of these incidents. To the contrary, the record contains overwhelming evidence of Petitioner's guilt for the offenses underlying his first-degree felony murder and especially aggravated robbery convictions, including Petitioner's incriminating statements to police about the incident. As such, the Court cannot find that Petitioner's counsel's failure to make the evidentiary objections and arguments Petitioner sets forth in these claims prejudiced Petitioner.

Accordingly, Petitioner is not entitled to relief under § 2254 for these claims.

### 7. Sufficiency of the Evidence

Petitioner next claims that his trial counsel was ineffective for not raising a claim challenging the sufficiency of the evidence [Doc. 1, p. 5]. In response, Respondent contends that this claim is not substantial, especially in light of Petitioner's recorded confession [Doc. 14, pp. 48–49]. The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for this claim. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000), *superseded by statute on other grounds, as recognized in Parker v. Matthews*, 567 U.S. 37 (2012). In *Jackson*, the Supreme Court held that the evidence is sufficient to sustain a conviction if, "after viewing the evidence in

Case 3:21-cv-00017-TAV-JEM   Document 20   Filed 03/13/24   Page 18 of 25   PageID #: 1602

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

As the Court noted above, the evidence of Petitioner's guilt for his first-degree felony murder and especially aggravated robbery convictions was overwhelming, including Petitioner's own incriminating statement to police. As such, the Court cannot find that Petitioner's counsel was deficient for not challenging the sufficiency of the evidence to support his convictions, or that there is any reasonable probability of prejudice to Petitioner from his counsel's failure to make such an argument. Thus, this argument has no merit, and Petitioner is not entitled to relief under § 2254 for this claim.

### 8. Fourth and Fifth Amendment Suppression

Petitioner also claims that his counsel should have challenged his statement to police "because it was obtained in violation of the Fourth and Fifth Amendment, thus being the product of the fruit of the poisonous tree" [Doc. 1, p. 5]. In his response, Respondent contends in relevant part that this claim is unclear and not substantial [Doc. 14, pp. 49–50].

The "fruit of the poisonous tree" doctrine provides that evidence is inadmissible in a criminal prosecution if it is "obtained as a direct result of an unconstitutional search or seizure," or if it is "later discovered and found to be derivative of any illegality or fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (internal quotation marks and citations omitted); *see also Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (evidence, either direct or indirect, which is gleaned from an unlawful search must be excluded).

19

The Court finds that this claim is unclear, as Petitioner does not set forth any facts to support the Court finding that the "fruit of the poisonous tree" doctrine applies in this case. And the Court declines to speculate about which of Petitioner's statements to police Petitioner alleges fall under the "fruit of the poisonous tree" doctrine, or the reason(s) that Petitioner alleges that this doctrine applies. Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

### 9. Testify

Petitioner next claims counsel should have allowed him to testify [Doc. 1, p. 6]. However, Petitioner raised this claim in his second amended petition for post-conviction relief [Doc. 7-19, pp. 53–54] but not in his post-conviction appeal to the TCCA [Doc. 7-21]. Thus, Petitioner's procedural default of this claim occurred on appeal, and *Martinez* cannot excuse it. *Middlebrooks*, 843 F.3d at 1136. Accordingly, the Court will not address this claim on the merits, and Petitioner is not entitled to relief under § 2254 for this claim.

### 10. Mental Health Evaluation and Preparing Petitioner for Trial

Petitioner's next two claims allege that his counsel was ineffective for (1) not pursuing a mental evaluation for Petitioner and (2) not allowing Petitioner to have meaningful participation in his trial [Doc. 1, p. 6]. The Court liberally construes these claims to raise the same arguments Petitioner raised in his post-conviction brief to the TCCA [Doc. 7-21, p. 15].

The TCCA addressed these claims as follows:

> In our view, the record supports the denial of post-conviction relief. Trial counsel's accredited testimony established that he met with the petitioner several times and that he reviewed the discovery materials with the

petitioner, even though he did not play the audio and video recordings for the petitioner. No evidence suggests that, had the petitioner had hard copies of all the discovery materials or reviewed the recorded evidence, the result of the proceeding would have been different. Additionally, although trial counsel expressed regret at not having the petitioner evaluated prior to trial, his testimony was clear that he did not actually believe an evaluation was necessary and that he would have been doing it "to cross a T." Importantly, the petitioner presented no evidence to suggest that he suffered from any mental disease or defect, much less any evidence that would have called into question the outcome of the trial.

*Stackhouse II*, at *5.

Petitioner has not alleged or established that the TCCA's denial of these claims was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented. And the record supports the TCCA's denial of these claims. Petitioner has never presented any expert testimony that he suffered from a mental condition at the time of the incident underlying his convictions, such that Tennessee law would have permitted expert testimony regarding that condition at trial. *State v. Hall*, 958 S.W.2d 679, 689, 690 (Tenn. 1997) (providing that under Tennessee law, expert testimony regarding a defendant's mental state is only admissible where it establishes "that the defendant lacks the capacity, because of a mental disease or defect, to form the requisite culpable mental state to commit the offense[]" and that expert evidence regarding a defendant's mental state "should not be offered as proof of 'diminished capacity'" or "a particular emotional state or mental condition" but only "to negate the existence of the culpable mental state required to establish the criminal offense for which the defendant is being tried."). Moreover, nothing in the record suggests that, had Petitioner had more access to discovery materials or more information about the trial process to allow him to

have more meaningful participation in the trial, this would have changed the result of his trial.

Accordingly, Petitioner is not entitled to relief under § 2254 for these claims.

### 11. Cumulative Effect of Counsel Errors

Petitioner also alleges that he is entitled to relief under § 2254 due to the cumulative effect of his counsel's errors. However, as set forth in this opinion, Petitioner has not demonstrated that he received ineffective assistance of counsel. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (holding that in absence of existence of constitutional error at trial, "there are simply no errors to cumulate"). As such, Petitioner is not entitled to relief under § 2254 on this ground.

### B. Structural Error

Petitioner lastly claims that Judge Baumgartner's addictions "before, during, and after" the time of his trial amounted to structural error that violated his due process rights and his right to a fair and impartial trial [Doc. 1, pp. 8–9]. While Petitioner did not raise this claim in his second amended petition for post-conviction relief, he presented some evidence about the issue of Judge Baumgartner's behavior during his trial at the evidentiary hearing on his post-conviction petition [Doc. 7-20, pp. 9–14, 70–71]. And in its order denying the post-conviction petition, the post-conviction court specifically accredited trial counsel's testimony that "there existed no issue with the trial court's fitness to preside" [Doc. 7-19, p. 62 (footnote omitted)]. But Petitioner did not raise this issue in his post-conviction appeal to the TCCA [Doc. 7-21]. Accordingly, to the extent that Petitioner raises the same claim that he raised regarding Judge Baumgartner in his post-conviction

22

proceeding, Petitioner procedurally defaulted that claim in his post-conviction appeal, and *Martinez* cannot excuse it. *Middlebrooks*, 843 F.3d at 1136.

Moreover, even if the Court assumes that Petitioner is presenting a different claim herein than he brought in his post-conviction petition, such that *Martinez* could conceivably excuse the default, Petitioner has not alleged that the ineffectiveness of his post-conviction counsel caused this procedural default, as required for *Martinez* to apply. *Huguely*, 964 F.3d at 498–99. But even if Petitioner attributed this omission to the ineffective assistance of his post-conviction counsel, the record would not support such the Court finding that his post-conviction counsel's decision not to pursue this claim amounted to deficient performance.

Specifically, at the post-conviction evidentiary hearing, Petitioner generally testified that he disagreed with the manner in which Judge Baumgartner handled some objections and evidentiary issues, noted that Judge Baumgartner had taken "rests," which he assumed were bathroom breaks, and stated that he felt that Judge Baumgartner had not paid attention and that the evidence was not sufficient to support his convictions [Doc. 7-20, pp. 8–14]. But contrary to Petitioner's testimony, Petitioner's counsel testified that Judge Baumgartner was "clear as a bell" and "on his A game" during the relevant portions of Petitioner's underlying criminal proceedings [*Id.* at 70–71]. And in its order denying the post-conviction petition, the post-conviction court specifically accredited Petitioner's trial counsel's testimony on this issue [Doc. 7-19, p. 62].

Moreover, the Court's independent review of the transcripts of the suppression hearing [Docs. 7-3, 7-4, 7-5] and Petitioner's trial [Docs. 7-6, 7-7, 7-8] supports

23

Petitioner's trial counsel's testimony regarding Judge Baumgartner and reveals no basis for Petitioner's claim that Judge Baumgartner's addictions amounted to structural error that violated his due process rights and his right to a fair and impartial trial. In fact, those transcripts indicate that Judge Baumgartner was highly engaged in Petitioner's criminal proceedings and knowledgeable about the issues therein.

Based on all of this, the Court cannot fault Petitioner's counsel for not challenging Judge Baumgartner's behavior during Petitioner's criminal proceedings in Petitioner's post-conviction proceeding. Accordingly, Petitioner is not entitled to relief under § 2254 for this claim.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for § 2254 relief will be **DENIED**, and this action will be **DISMISSED**.

The Court must now consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a COA may issue only where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable

24

jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's conclusion that Petitioner procedurally defaulted the claims that the Court denied on a procedural basis. Additionally, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to any of his claims that the Court addressed on the merits, such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

An appropriate judgment order will enter.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE